```
 1  ROBERT E. OPERA -- State Bar No. 101182
    ropera@winthropcouchot.com
 2  ANDREW LEVIN – State Bar No. 290209
    alevin@winthropcouchot.com
 3  WINTHROP COUCHOT
    PROFESSIONAL CORPORATION
 4  660 Newport Center Drive, Fourth Floor
    Newport Beach, CA 92660
 5  Telephone:  (949) 720-4100
    Facsimile:   (949) 720-4111
 6
    [Proposed] General Insolvency Counsel for
 7  Debtor and Debtor-in-Possession
```

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>BRAND AFFINITY TECHNOLOGIES, INC., a Delaware corporation,<br><br>Debtor and<br>Debtor-in-Possession. | Case No. 8:14-bk-17244 SC<br><br>Chapter 11 Proceeding<br><br>**DEBTOR'S MOTION FOR ORDER:  (1) APPROVING SALE AND BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF ASSETS OF THE DEBTOR'S ESTATE FREE AND CLEAR OF LIENS AND INTERESTS; (2) SETTING A HEARING ON SALE MOTION; AND (3) APPROVING FORM AND MANNER OF NOTICE TO BE PROVIDED TO CREDITORS AND PARTIES-IN-INTEREST IN CONNECTION WITH SALE MOTION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[11 U.S.C. §§ 363 and 365; LBR 6004-1(b)]<br><br>[DECLARATION OF MYDUNG TRAN AND DECLARATION OF KERRY KRISHER IN SUPPORT OF THIS MOTION FILED CONCURRENTLY HEREWITH]<br><br>DATE: [Hearing To Be Scheduled]<br>TIME: [Hearing To Be Scheduled]<br>PLACE: Courtroom 5C<br>Ronald Reagan Federal Building<br>and United States Courthouse<br>411 West 4th Street<br>Santa Ana, CA 92701 |

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, CERTAIN CREDITORS AND OTHER PARTIES-IN-INTEREST:**

Brand Affinity Technologies, Inc., the debtor and debtor-in-possession in the above-captioned Chapter 11 case ("Debtor"), hereby submits this Motion for Order: (1) Approving Sale and Bidding Procedures in Connection with the Sale of Assets of the Debtor's Estate Free and Clear of Liens and Interests; (2) Setting a Hearing on Sale Motion; and (3) Approving Form and Manner of Notice to Be Provided to Creditors and Parties-in-Interest in Connection with Sale Motion ("Sale Procedures Motion").

By this Sale Procedures Motion, the Debtor requests that this Court enter an order granting to the Debtor, in part, the following relief:

1. Approving the sale and bidding procedures, set forth in that Sale Procedures Memorandum attached as Exhibit "2" to the Declaration of Kerry Krisher filed concurrently herewith ("Krisher Declaration"), that the Debtor hereby proposes in connection with the conducting of an auction with respect to a proposed sale of substantially all of the Debtor's assets and properties;

2. Setting a hearing on a Motion for Order Authorizing (1) Sale of Assets of the Estate Free and Clear of Liens and Interests; (2) Assumption and Assignment of Leases and Executory Contracts; and (3) Rejection of Leases and Executory Contracts ("Sale Motion") to be filed by the Debtor; and

3. Approving the manner and content of the notice to be provided to the Debtor's creditors and parties-in-interest in this case in connection with the hearing on the Sale Motion.

Subject to the approval of this Court, the Debtor and a stalking horse bidder, Creekside Investment Management, LLC ("Stalking Horse Bidder"), have entered into that Asset Purchase Agreement ("Purchase Agreement") pursuant to which the Debtor has agreed to sell to the Stalking Horse Bidder and the Stalking Horse Bidder has agreed to purchase from the Debtor the Purchased Assets, as such term is defined in the Purchase Agreement attached as Exhibit "2" to the

Declaration of Mydung Tran filed concurrently herewith ("Tran Declaration").[1] The Debtor has determined that the best means for the Debtor to obtain the most favorable recovery in this case is for the Debtor to conduct an Auction of the Purchased Assets, subject to open bidding, with the Auction scheduled to be conducted on January 28, 2015. The Debtor then will seek, at the Sale Motion Hearing, the Court's approval of the Successful Bidder for the Purchased Assets, so that a Closing of the Transaction may occur by February 17, 2015. By this Sale Procedures Motion, the Debtor requests that the Court approve the sale and bidding procedures proposed by the Debtor, as described in the Sale Procedures Memorandum, in connection with the sale process and the conducting of the Auction.

In support of this Sale Procedures Motion, the Debtor respectfully represents as follows:

First, good cause exists for hearing and ruling on this Sale Procedures Motion on, or as soon as the Court's calendar allows after, the seventh (7th) day after the filing and service of this Sale Procedures Motion, in accordance with the provisions of Rule 6004-1(b)(1) of the Local Bankruptcy Rules.

Second, the sale and bidding procedures hereby proposed by the Debtor are fair, and provide for a "level playing field" for prospective bidders with respect to the Transaction contemplated herein.

Third, the Sale Motion Hearing should be held on or about February 2, 2015 in order to enable the Debtor to effectuate an expeditious sale of the Purchased Assets. Scheduling the Sale Motion Hearing for such date will provide an adequate opportunity for marketing the Purchased Assets, taking into account the Debtor's limited financial resources and deteriorating financial condition.

Fourth, the notice that the Debtor proposes to provide to creditors and parties-in-interest in connection with the Sale Motion Hearing is designed reasonably to enhance interest in the acquisition of the Purchased Assets and is sufficient under the circumstances of this case.

---

[1] Unless otherwise defined herein, the definitions of the capitalized terms contained herein are as set forth in the Purchase Agreement.

| | |
|---|---|
| 1 | This Sale Procedures Motion is made and based upon the allegations and representations |
| 2 | set forth hereinabove, the Memorandum of Points and Authorities attached hereto, the Tran |
| 3 | Declaration and the Krisher Declaration filed concurrently herewith, the pleadings, papers, and |
| 4 | other documents on file in this Chapter 11 case, and any supplemental evidence, both oral and |
| 5 | documentary, that the Debtor may submit to this Court at or before the time of the hearing on this |
| 6 | Sale Procedures Motion. |

**WHEREFORE,** the Debtor requests that this Court enter an order:

1. Approving the sale and bidding procedures that the Debtor hereby proposes in connection with the sale process and the Auction;

2. Setting the Sale Motion Hearing for February 2, 2015;

3. Approving as adequate under the circumstances of this case (i) the marketing of the Debtor's assets, and (ii) the content of the written notice (Exhibit "5" to the Tran Declaration) ("Sale Motion Hearing Notice"), and the manner of the notice, to be provided to the Debtor's creditors and parties-in-interest in this case in connection with the Sale Motion Hearing, as described hereinbelow; and

4. Granting to the Debtor such other and further relief as this Court deems just and proper under the circumstances of this case.

DATED: December 16, 2014            **WINTHROP COUCHOT**
                                    **PROFESSIONAL CORPORATION**


                                    By:    /s/*Robert E. Opera*
                                           Robert E. Opera
                                           Andrew Levin
                                    [Proposed] General Insolvency Counsel for
                                    Debtor and Debtor-in-Possession

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The Debtor's business has deteriorated and the Debtor has concerns that it cannot reorganize its financial affairs. Furthermore, the Debtor is facing liquidity constraints and does not have the financial wherewithal to continue to operate its business throughout a prolonged Chapter 11 process. The Debtor has determined, therefore, that, in order to maximize the value of its estate, the Debtor should seek to effectuate a prompt, going concern sale of its business and the assets used therein, subject to a competitive bidding and sale process.

The Debtor believes that, unless a sale of the Debtor's assets is expeditiously consummated, there will be significant deterioration in the value of the Debtor's assets. Indeed, the Debtor cannot endure an extended stay in Chapter 11 without significant risk to the Debtor's survival. As set forth in the Tran Declaration, the Debtor has suffered and will continue to suffer losses and projects that, absent a cash infusion, the Debtor's cash flow will be insufficient to sustain its operations during the first sixty (60) days after the filing of its case.[2] Consistent with these time constraints, the Stalking Horse Bidder requires by the Purchase Agreement that the Closing of the Transaction occur by February 17, 2015.

Subject to the approval of the Court, the Debtor intends to sell the Purchased Assets in order to preserve the going concern value of such assets for the benefit of the Debtor's estate and its creditors. By this Sale Procedures Motion, the Debtor requests that a hearing on the Sale Motion, to be filed by the Debtor, be held on or as soon as practicable after February 2, 2015. By this Sale Procedures Motion, the Debtor proposes sale and bidding procedures in order to facilitate the sale process and a successful Auction and potentially to increase recovery by the Debtor's estate from the sale of the Purchased Assets in accordance with the terms and conditions set forth herein. The Debtor believes that the proposed sale and bidding procedures are fair, will lead to an orderly sale process, and will ensure a level playing field for all prospective purchasers.

---

[2] Subject to the approval of the Court, the Stalking Horse Bidder has agreed to provide to the Debtor a $75,000 cash infusion, by providing to the Debtor a secured loan as a cash advance against the Purchase Price.

## II.

## GENERAL BACKGROUND FACTS

A summary of the background of the Debtor, including descriptions of the Debtor's business operations, historical financial performance, and financial difficulties which led to the Debtor's Chapter 11 filing, follows immediately hereinbelow.

### A.    Background of the Debtor.

The Debtor is a corporation duly organized and existing under the laws of the State of Delaware. The Debtor's headquarters is located in Irvine, California. The Debtor is engaged in the business of providing services and a platform for image capturing (e.g., photography), image e-commerce, and digital content aggregation, management, sharing and distribution. The Chief Financial Officer of the Debtor is Mydung Tran ("Ms. Tran").

### B.    Events Precipitating Chapter 11 Filing by the Debtor.

The Debtor's business is deteriorating and the Debtor is experiencing severe financial difficulties. The Debtor's financial difficulties are attributable primarily to the following: reduced revenues and conversion rates as consumers have moved towards mobile use and consumption of photos; increased labor costs to capture photos; increased licensing fees for branded marks used in the sale of photo products, charged by National Football League teams, Major League Baseball teams and by other entities; increased constraints placed by trading partners on marketing activities; increased overhead costs to support proposed growth initiatives; the substantial legal fees incurred by the Debtor to defend a pending class action lawsuit filed against the Debtor in June 2013 (Yahchaaroah Lightbourne v. Printroom, Inc., Professional Photo Storefronts, Inc., Brand Affinity Technologies, Inc., and CBS Interactive, Inc.) ("Lightbourne Action"); and the uncertainty and disruption associated with the Lightbourne Action and the counter-claims asserted against the Debtor by CBS Interactive, Inc. in connection therewith, particularly with respect to capital raising activities for the Debtor. These financial difficulties caused cash flow problems for the Debtor, and, as a consequence, the Debtor failed to pay timely numerous creditors. The Debtor acted diligently to reduce its operating expenses and to restructure its obligations with its creditors in order to attempt to achieve positive cash flow, but these efforts ultimately were not successful.

MAINDOCS-#207871-v1-BAT_SaleProcMtn.doc

Moreover, given the Debtor's financial difficulties and the pendency of the Lightbourne Action, the Debtor has been unable to obtain financing or equity infusions in an amount adequate to sustain the Debtor's ongoing operations.

The Debtor's operations currently are unprofitable and the Debtor believes that it is unlikely that it will be able to stem its operating losses. The Debtor projects that, absent a cash infusion, its cash flow will be insufficient to sustain its operations after about mid-January 2015. The Debtor has concerns, therefore, regarding the viability of the Debtor's business.

Based upon the foregoing, the Debtor has determined that the best means for maximizing the value of the Debtor's assets is to attempt to sell as expeditiously as possible the Debtor's business as a going concern, and, toward that end, has identified a purchaser of substantially all of the assets of the Debtor's business. Given the Debtor's financial difficulties and unpaid debt, the purchaser requires that the sale be consummated pursuant to a sale process in Chapter 11.

Accordingly, in order to preserve the value of the Debtor's assets for the benefit of the Debtor's creditors, the Debtor filed a voluntary Chapter 11 petition for relief on December 15, 2014 ("Petition Date"), intends to pursue, subject to the approval of this Court, a sale of substantially all of the Debtor's assets, subject to an open and competitive bidding process.

### C. The Debtor's Financial Condition.

As set forth in the Tran Declaration, the Debtor's business has been, and continues to be, unprofitable. The Debtor's financial performance is summarized as follows:

| Year | Revenues | Operating Profitability (Losses) |
|---|---|---|
| 2012 | $11,146,236 | $(6,724,008) |
| 2013 | $15,210,566 | $(9,090,473) |
| 2014 (Jan. 1, 2014– Oct. 31, 2014) | $9,608,020 | $(2,962,075) |

As of the Petition Date, the Debtor had approximately $11,000 in cash. As set forth in the Tran Declaration, the Debtor projects that, for the first 60 days after the Petition Date, the Debtor's operations will be unprofitable, and that, absent a cash infusion, the

Debtor will consume all or substantially all of the Debtor's cash by about mid-January 2015, leaving the Debtor's viability as a going concern in question. See, the Debtor's Cash Flow Projection attached as Exhibit "1" to the Tran Declaration.

**D.    The Debtor's Employment of GlassRatner.**

The Debtor has employed GlassRatner Advisory & Capital Group, LLC ("GlassRatner") to provide consulting and marketing services to assist the Debtor with respect to the sale process. GlassRatner's services for the Debtor will include the following:

1. Preparing an information memorandum for distribution to prospective bidders ("Sale Information Memorandum");

2. Developing a list of prospective bidders;

3. Assisting the Debtor regarding the marketing of the Debtor's assets;

4. Assisting bidders to perform diligence investigations with respect to the Debtor's business, including assisting with respect to the development and management of a data room;

5. Attempting to obtain overbids for the Debtor's assets and engaging in negotiations with bidders to try to maximize proceeds from the sale of the Debtor's assets; and

6. Assisting the Debtor in its efforts to obtain from the Court approval of a Transaction, and assisting with respect to the Closing of a Transaction.

**E.    Marketing of Debtor's Business.**

The Debtor, with the assistance of Glass Ratner, is in the process of marketing the Debtor's assets. The Debtor's marketing efforts will include the following:

1. <u>Advertising</u>. The Debtor will advertise the proposed sale for approximately one month in the digital editions of the Los Angeles Times and the Silicon Valley Business Journal. Moreover, notice of the sale will be posted on websites that specifically feature assets offered for sale through Bankruptcy Code Section 363 proceedings.

2. <u>Contacting of Potential Bidders</u>. GlassRatner, with input from the Debtor, is in the process of developing a list of parties, such as competitors of the Debtor, that

potentially may have interest in acquiring assets of the Debtor. GlassRatner will provide to such parties, among other things, copies of the following documents: the Sale Motion Hearing Notice; the Sale Information Memorandum; and the Sale Procedures Memorandum. GlassRatner intends to supplement such list by providing notice of the sale process to numerous investment banking firms and to other potential financial and strategic acquirers. <u>See</u>, Krisher Declaration.

3. <u>Sale Motion Hearing Notice</u>. The Debtor will serve a copy of the Sale Motion Hearing Notice on all of the Debtor's creditors and other parties-in-interest in this case.

F. **<u>Proposed Sale of Assets.</u>**

The Debtor has received from the Stalking Horse Bidder an offer to purchase the Purchased Assets for a purchase price equal to the sum of the following: (i) $400,000 cash; (ii) the assumption of the Assumed Liabilities; and (iii) the payment of Sales Taxes and Cure Costs associated with the Transaction. This offer currently represents the only and thus highest and best offer that the Debtor has received for its assets. A true and correct copy of the Purchase Agreement reflecting this offer, in substantially final form, is attached as Exhibit "2" to the Tran Declaration and is incorporated herein by this reference. The sale of the Purchased Assets is subject to the sale and auction process proposed herein and, ultimately, this Court's approval. The Debtor believes that a going concern sale of the Purchased Assets will maximize the value of its estate for the benefit of its creditors and is therefore preferable to any effort to dispose of the Purchased Assets on a piecemeal basis through a liquidation.

G. **<u>Disclosure About Stalking Horse Bidder.</u>**

The Stalking Horse Bidder is a California limited liability company, 100% of the membership interests in which is owned by Mr. Steelberg. Mr. Steelberg is a founder of the Debtor, and, until he resigned on December 15, 2014, was Chief Executive Officer and President of the Debtor. Mr. Steelberg continues to serve as a member of the Board of Directors of the Debtor.

Given Mr. Steelberg's involvement with the Stalking Horse Bidder, Mr. Steelberg will have no role of any nature for the Debtor in the sale process. Mr. Steelberg will recuse himself from any evaluation by the Debtor of issues pertaining to, or any participation on behalf of the Debtor in, the sale process. GlassRatner will be charged with the primary responsibility of handling, on behalf of the Debtor, all matters relating to the sale process, including the marketing of the Debtor's assets, the coordinating of diligence by prospective bidders, the negotiations with prospective bidders, the evaluation of any overbids, and the closing of any Transaction. Therefore, an independent entity will coordinate all matters relating to the sale process in this case, thereby providing assurance that there will be a level playing field for all prospective bidders notwithstanding the fact that the Stalking Horse Bidder is an entity affiliated with the Debtor.

**H.     The Proposed Sale and Bidding Procedures.**

In order to create a fair, orderly and competitive process for the bidding on the Purchased Assets, the Debtor proposes that the Court approve the sale and bidding procedures with respect to the contemplated sale of the Purchased Assets in substantially the form reflected in the Sale Procedures Memorandum attached as Exhibit "2" to the Krisher Declaration. The Debtor believes that the proposed sale and bidding procedures are fair, and provide for a level playing field to all prospective bidders.

### III.

### GOOD CAUSE EXISTS FOR HEARING THIS MOTION ON A PROMPT BASIS

Procedural authorization for this Sale Procedures Motion is found in Rule 6004-1(b)(1) of the Local Bankruptcy Rules. Rule 6004-1(b), entitled "Motion for Order Establishing Procedures for the Sale of Estate Property," provides, in pertinent part, as follows:

> (1) <u>Timing of Hearing</u>. A hearing on a Motion to Establish Procedures for the Sale of the Estate's Assets ("Sale Procedure Motion") may be scheduled on not less than 7 days notice to applicable parties, unless an order shortening the notice period for a hearing is obtained under LBR 9075-1(b).

LBR 6004-1(b)(1).

Rule 6004-1(b)(1) of the Local Bankruptcy Rules provides, therefore, that a hearing on a sale procedures motion may be scheduled on not less than seven days' notice.

Further procedural authorization for this Sale Procedures Motion is found in Rule 9006 of the Federal Rules of Bankruptcy Procedure ("Federal Bankruptcy Rules"), and in Rule 9075-1 of the Local Bankruptcy Rules for the Central District of California.

Good cause exists for hearing this Sale Procedures Motion on as prompt a basis as possible consistent with the requirements of the Local Bankruptcy Rules.

<u>First</u>, the Debtor needs to close the sale of the Purchased Assets by February 17, 2015 in order to comply with the terms of the Purchase Agreement.

<u>Second</u>, the Debtor lacks adequate cash to operate its business and projects that, absent a cash infusion, it would run out of cash by about mid-January 2015. The Stalking Horse Bidder has agreed, subject to the approval of the Court, to provide to the Debtor a $75,000 cash infusion, by providing to the Debtor a secured loan as an advance against the Purchase Price. A termination of the Debtor's business operations would have an extremely adverse impact on the value of the Debtor's estate. The value of the Debtor's assets would deteriorate substantially in a Chapter 7 liquidation, the likely consequence of any inability by the Debtor to fund the Debtor's ongoing operations. In order to preserve the going concern value of the Debtor's assets, then, the sale process must be effectuated as expeditiously as possible.

<u>Third</u>, as stated in the Krisher Declaration and the Tran Declaration, the Debtor intends to market diligently the Purchased Assets. It is important for prospective bidders participating in the sale process to obtain, as promptly as possible, notice of the sale and bidding procedures approved by the Court.

<u>Fourth</u>, no prejudice will be caused to any creditor or other party-in-interest if this Court considers promptly this Sale Procedures Motion. The sale and bidding procedures proposed hereby by the Debtor are fair and provide for a level playing field for all prospective bidders.

The Debtor's proposed timeline for the sale process in this case is attached as Exhibit "3" to the Tran Declaration.

Based upon the foregoing, the Debtor respectfully submits that this Court should hear and rule on this Sale Procedures Motion as promptly as possible consistent with the requirements of the Local Bankruptcy Rules.

## IV.

## GOOD CAUSE EXISTS TO APPROVE THE DEBTOR'S PROPOSED SALE AND BIDDING PROCEDURES

The Debtor believes that the proposed sale and bidding procedures are reasonable, provide "transparency" in the sale process in this case, and will facilitate an orderly and fair sale process in this case. As set forth in the Krisher Declaration and Tran Declaration, the Debtor believes that the proposed sale and bidding procedures are reasonable and treat all parties fairly. Under normal circumstances, sales of businesses are fraught with complexity. In the context of bankruptcy, such sales become even more challenging, due, in part, to a debtor's duty to maximize the value of estate assets and the obligation to encourage competitive bidding in order to achieve the highest and best price for the sale of the debtor's assets. It is clear that few potential buyers of a debtor's business would be willing to enter into a purchase agreement in the context of a debtor's bankruptcy case without assurance that the bidding process will treat all parties fairly.

In this case, the Debtor believes that the proposed sale and bidding procedures are fair and should be approved by this Court. In this regard, the following should be noted:

### A.    The Proposed Sale Procedures Are Fair.

The Debtor's proposed sale procedures are fair and do not unduly favor any prospective bidders in the bidding process. The fairness of the sale procedures is evidenced by the following:

#### 1.    Same Diligence Rights.

All prospective bidders may review financial reporting associated with the Purchased Assets and all agreements associated with the Purchased Assets. All prospective bidders will have the same and equal access to the Debtor's books and records and premises with respect to the Purchased Assets for the purpose of conducting a due diligence investigation with respect to a Transaction and must complete their due diligence by the same time (i.e., by the Bid Deadline).

**2.     Fair Procedures for Qualifying Bidders.**

The proposed procedures for qualifying prospective bidders are fair, and the requirements imposed upon prospective bidders to become Qualified Bidders are reasonable.

**3.     Same Disclosure Regarding Stalking Horse Bids.**

All Qualified Bidders will receive a copy of the Stalking Horse Bid.

**4.     Open Auction Proceeding.**

The proposed sale procedures provide for an "open auction" process by and among all Qualified Bidders, thereby providing to all bidders an equal opportunity to present competitive offers.

**5.     No Break-Up Fee.**

No break-up fee, expense reimbursement payment or other payments will be owed to the Stalking Horse Bidder if its Stalking Horse Bid is overbid, and, as a consequence, another bidder is the Successful Bidder.

**B.     The Proposed Bidding Procedures at an Auction Are Fair.**

Similarly, the Debtor's proposed procedures for the conducting of the Auction and for the Closing of the Transaction are fair, and provide for a level playing field for all prospective bidders. The fairness of such procedures is evidenced by the following:

**1.     Equal Disclosure Regarding Bids.**

The Debtor proposes to conduct the Auction in an open manner, and to provide an opportunity for all Qualified Bidders to engage in competitive bidding. Since bidding will occur in an open forum, all Qualified Bidders will know each bid made at the Auction, and will have a reasonable opportunity to evaluate the bids. The Debtor will provide full and equal disclosure to all Qualified Bidders relative to the Debtor's position regarding bids made at the Auction. Each Qualified Bidder will have the right, but not the obligation, to improve its bid at the Auction.

**2.     Initial Bidding Increment Is Fair.**

The initial bidding increment with respect to the Transaction is only $50,000. This proposed initial bidding increment should not impair materially any competitive bidding.

### 3. Same Incremental Bids at Auction.

At the Auction, after any initial overbid is made, subsequent overbids must be in minimum $20,000 increments on terms the same for all Qualified Bidders.

### 4. Auction Approved by Court.

The Auction will be conducted in a manner approved by this Court.

### 5. Court Will Confirm Successful Bidder.

After the conclusion of any Auction, the Debtor will announce the bid that it has accepted as the Successful Bid. The Debtor will request, at the Sale Motion Hearing, that this Court confirm such bid as the Successful Bid. This Court will determine, at the Sale Motion Hearing, the bid that is the most favorable bid for the Debtor's creditors. This Court, therefore, will confirm in open Court the Successful Bid with respect to the Purchased Assets.

In addition, cognizant of the fact that the Stalking Horse Bidder is an entity affiliated with the Debtor, the Debtor has employed GlassRatner to be primarily responsible for conducting the sale process in this case. The employment of GlassRatner to handle the sale process in this case provides assurance that the sale process will be conducted fairly and in an open and transparent manner, with no bias in favor of the Stalking Horse Bidder. GlassRatner is charged with the responsibility of conducting a fair and open sale process and attempting to maximize the recovery from the sale of the Debtor's assets, and will owe its duty and loyalty in this case solely to the Debtor's estate, and not to the Debtor's insiders or to the Stalking Horse Bidder.

Based upon the foregoing, the Debtor respectfully submits that the proposed sale and bidding procedures are reasonable and requests that this Court approve the sale and bidding procedures.

## V.

## THIS COURT SHOULD SET A HEARING ON THE SALE MOTION FOR FEBRUARY 2, 2015

The Debtor respectfully submits that the hearing on the Sale Motion should be held on or as soon as practicable after February 2, 2015.

<u>First</u>, the Purchase Agreement provides that the Closing of the Transaction must occur by February 17, 2015. Scheduling a hearing on the Sale Motion on or about February 2, 2015 will provide to the Debtor time adequate to obtain Court approval of a Transaction and to close the Transaction.

<u>Second</u>, as set forth hereinabove, given the Debtor's limited cash resources, it is important that the sale process be conducted as promptly as possible. The Debtor projects that, absent a cash infusion from the Stalking Horse Bidder (to be provided subject to approval of the Court), it would run out of cash by about mid-January 2015. Conducting the Sale Motion Hearing by February 2, 2015 will allow the Debtor to close a Transaction by February 17, 2015, thereby preserving the going-concern value of the Debtor's business.

<u>Third</u>, setting the Sale Motion Hearing for February 2, 2015 will allow the Debtor to serve the Sale Motion Hearing Notice, which will include notice of the sale and bidding procedures approved by the Court, in accordance with the requirements of Rules 6004-1(c) and 9013-1(a) and (d) of the Local Bankruptcy Rules. Accordingly, creditors and parties-in-interest, and any prospective bidders for the Purchased Assets, will be given ample notice of the Sale Motion Hearing.

Based upon the foregoing, the Debtor respectfully submits that this Court should schedule the Sale Motion Hearing for February 2, 2015, or as soon as practicable thereafter as the Court's calendar will permit.

## VII.

## THIS COURT SHOULD APPROVE THE CONTENT AND MANNER OF THE NOTICE PROPOSED TO BE PROVIDED IN CONNECTION WITH THE SALE MOTION

The Debtor proposes to advertise the sale of the Debtor's assets for approximately one month in the digital editions of the following publications:

Los Angeles Times; and

Silicon Valley Business Journal.

In addition, the Debtor will post notice of the sale on websites that specifically feature assets offered for sale through Bankruptcy Code Section 363 proceedings.

A copy of the proposed advertisement of the sale of the Debtor's assets is attached as Exhibit "4" to the Tran Declaration.

The Debtor estimates that the cost of such advertisements will be approximately $3,500. The Debtor believes that it cannot afford to incur materially additional expense in connection with the advertising of the sale process.

Attached as Exhibit "5" to the Tran Declaration is the Debtor's proposed Sale Motion Hearing Notice to be served on creditors and parties-in-interest in connection with the Sale Motion Hearing. The Debtor believes that the Sale Motion Hearing Notice sets forth clearly the sale and bidding procedures proposed herein, the date and time of the Auction, the date and time of the Sale Motion Hearing, the date by which any objections to the Sale Motion must be filed, and all other material information relevant to the sale process.

The Debtor will serve the Sale Motion Hearing Notice on the following entities: (i) all creditors of the estate and parties-in-interest in this case; (ii) all entities who have requested special notice in this case; and (iii) entities that have expressed interest, or that the Debtor believes may have legitimate interest, in acquiring the Purchased Assets (e.g., competitors of the Debtor, investment banking firms, and other potential financial or strategic acquirers), a list of which is being developed by GlassRatner with input from the Debtors. The Debtor believes that the notice proposed by the Debtor will help to ensure that the sale of the Purchased Assets will receive as much exposure as possible under the circumstances, and will further ensure a level playing field in the sale process.

The Debtor will serve a copy of the Sale Motion on the following entities: (i) the United States Trustee; (ii) any official committee of creditors that may be formed in the case or any counsel employed thereby; and (iii) those parties whose unexpired leases or executory contracts

are proposed to be assumed and assigned, or rejected, in connection with the Transaction. All other creditors and parties-in-interest will receive a copy of the Sale Motion Hearing Notice.

The Debtor respectfully submits that the proposed notice to be provided to creditors and parties-in-interest (including, without limitation, the entities most likely to submit bids for the purchase of the Purchased Assets) is well designed to attract the most interest in the acquisition of the Purchased Assets, and thereby to maximize the value of the Purchased Assets, and is sufficient under the circumstances of this case. The Debtor respectfully requests, therefore, that this Court approve as adequate under the circumstances of this case the marketing of Debtor's assets and the form of the Sale Motion Hearing Notice attached as Exhibit "5" to the Tran Declaration, and approve the proposed notice procedures set forth herein.

## VIII.

## CONCLUSION

Based upon the foregoing, the Debtor hereby respectfully requests that this Court (i) approve the sale and bidding procedures that the Debtor hereby proposes in connection with the Auction; (ii) set a hearing on the Sale Motion for February 2, 2015 or as soon as practicable thereafter as the Court's calendar will permit; (iii) approve the marketing of the Debtor's assets and the content of the Sale Motion Hearing Notice (Exhibit "5" to the Tran Declaration) and the manner of the notice to be provided to the Debtor's creditors and parties-in-interest in connection with the Sale Motion Hearing as described herein; and (iv) grant to the Debtor such other and further relief as this Court deems just and proper under the circumstances of this case.

DATED: December 16, 2014

**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**

By:  /s/Robert E. Opera
    Robert E. Opera
    Andrew Levin
    [Proposed] General Insolvency Counsel for
    Debtor and Debtor-in-Possession

MAINDOCS-#207871-v1-BAT_SaleProcMtn.doc

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Floor, Newport Beach, CA 92660.

A true and correct copy of the foregoing document entitled: **Debtor's Motion For Order: (1) Approving Sale And Bidding Procedures In Connection With The Sale Of Assets Of The Debtor's Estate Free And Clear Of Liens And Interests; (2) Setting A Hearing On Sale Motion; And (3) Approving Form And Manner Of Notice To Be Provided To Creditors And Parties-In-Interest In Connection With Sale Motion; Memorandum Of Points And Authorities [11 U.S.C. §§ 363 And 365; LBR 6004-1(B)] [Declaration Of Mydung Tran And Declaration Of Kerry Krisher In Support Of This Motion Filed Concurrently Herewith]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On December 16, 2014, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**: On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on December 16, 2014, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Via Attorney Service**
Honorable Scott C. Clarkson
Ronald Reagan Federal Building
411 W. Fourth St.
Santa Ana, CA 92701

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 16, 2014 | Melody Conour | /s/ Melody Conour |
|---|---|---|
| Date | Printed Name | Signature |

NEF SERVICE LIST

- **Nancy S Goldenberg**   nancy.goldenberg@usdoj.gov
- **Robert E Opera**   ropera@winthropcouchot.com, pj@winthropcouchot.com;vcorbin@winthropcouchot.com;mconour@winthropcouchot.com
- **United States Trustee (SA)**   ustpregion16.sa.ecf@usdoj.gov

-4-