1
ROBERT E. OPERA -- State Bar No. 101182
ropera@winthropcouchot.com
2
ANDREW LEVIN – State Bar No. 290209
alevin@winthropcouchot.com
3
**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
4
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
5
Telephone:   (949) 720-4100
Facsimile:    (949) 720-4111
6

7
[Proposed] General Insolvency Counsel for
Debtor and Debtor-in-Possession

8
### UNITED STATES BANKRUPTCY COURT

9
### CENTRAL DISTRICT OF CALIFORNIA

10
### SANTA ANA DIVISION

11

12
In re:

13
BRAND AFFINITY

14
TECHNOLOGIES, INC., a Delaware
corporation,

15

16
                Debtor and

17
                Debtor-in-Possession.

18

19

20

21

22

23

24

25

26

27

28

Case No. 8:14-bk-17244 SC

Chapter 11 Proceeding

**DECLARATION OF KERRY KRISHER IN SUPPORT OF DEBTOR'S MOTION FOR ORDER: (1) APPROVING SALE AND BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF ASSETS OF THE DEBTOR'S ESTATE FREE AND CLEAR OF LIENS AND INTERESTS; (2) SETTING A HEARING ON SALE MOTION; AND (3) APPROVING FORM AND MANNER OF NOTICE TO BE PROVIDED TO CREDITORS AND PARTIES-IN-INTEREST IN CONNECTION WITH SALE MOTION**

DATE:       [Hearing To Be Scheduled]
TIME:        [Hearing To Be Scheduled]
PLACE:      Courtroom 5C
                 Ronald Reagan Federal Building
                 and United States Courthouse
                 411 West 4th Street
                 Santa Ana, CA 92701

1    I, Kerry Krisher, hereby declare and state as follows:

2    1.    I am a Principal in the Orange County, California office of GlassRatner Advisory

3    & Capital Group, LLC ("GlassRatner"), proposed financial advisors to Debtor Brand Affinity

4    Technologies, Inc. ("Debtor"). The matters set forth herein are within my own personal

5    knowledge, and, if called upon as a witness, I could and would testify competently thereto.

6    2.    This Declaration is submitted in support of the Debtor's Motion for Order: (1)

7    Approving Sale and Bidding Procedures in Connection with the Sale of Assets of the Debtor's

8    Estate Free and Clear of Liens and Interests; (2) Setting a Hearing on Sale Motion; and (3)

9    Approving Form and Manner of Notice to be Provided to Creditors and Parties-In-Interest in

10    Connection with Sale Motion ("Sale Procedures Motion").[1]

11    **Background of Declarant.**

12    3.    I am a Certified Public Accountant and I have more than 25 years' experience in

13    bankruptcy consulting, forensic accounting, acquisition due diligence, litigation support and

14    public accounting. I have been the lead professional on numerous high profile and complex

15    engagements, including engagements providing financial restructuring and reorganization services

16    to companies in Chapter 11 cases and to companies in out-of-court restructurings, and to creditors

17    of companies in Chapter 11 cases. I have served as a liquidating trustee and a plan administrator

18    in bankruptcy cases, and I have been appointed as a state court receiver. I currently am serving as

19    a financial advisor to debtors in three Chapter 11 cases pending in the Central District of

20    California and the District of Delaware and as a financial advisor to a Chapter 7 trustee. I have

21    provided numerous declaration testimonies in federal and state courts.

22    4.    I hold a Master of Business Administration degree from Tulane University and a

23    Bachelor of Arts degree from the University of California, Santa Barbara. I am a California

24    Certified Public Accountant, a Certified Forensic Accountant and I am Certified in Financial

25    Forensics.

26

27

28    _____

[1] Unless otherwise defined herein, the capitalized terms contained herein are as set forth in the Sale Procedures Motion.

-2-

5.      Along with Adam Meislik of GlassRatner, I am the person at GlassRatner primarily responsible for GlassRatner's proposed engagement with the Debtor.

6.      GlassRatner is a national, multi-office financial advisory services firm. GlassRatner has substantial experience providing advisory services to businesses that are experiencing financial distress or that are in Chapter 11 proceedings.  GlassRatner has a national reputation in the area of bankruptcy and restructure advisory services and, over the past several years, GlassRatner has advised lenders and borrowers on more than $20.0 billion dollar face value of debt in one form or another of distress or restructure.  Copies of Adam Meislik's résumé and my résumé are attached hereto, collectively, as Exhibit "1" and are incorporated herein by this reference.

**Employment of GlassRatner.**

7.      Subject to the approval of the Court, the Debtor has employed GlassRatner to provide consulting and marketing services to assist the Debtor with respect to the sale process in this case.  GlassRatner's services for the Debtor will include the following:

a.      Preparing an information memorandum for distribution to prospective bidders ("Sale Information Memorandum");

b.      Developing a list of prospective bidders;

c.      Assisting the Debtor regarding the marketing of the Debtor's assets;

d.      Assisting bidders to perform diligence investigations with respect to the Debtor's business, including assisting with respect to the development and management of a data room;

e.      Attempting to obtain overbids for the Debtor's assets and engaging in negotiations with bidders to try to maximize proceeds from the sale of the Debtor's assets; and

f.      Assisting the Debtor in its efforts to obtain from the Court approval of a Transaction, and assisting with respect to the Closing of a Transaction.

**Sale Process.**

MAINDOCS-#207871-v1-BAT_SaleProcMtn.doc

1    8.    The Debtor has received from the Stalking Horse Bidder an offer to purchase the

2   Purchased Assets subject to the sale and bidding procedures proposed by the Debtor pursuant to

3   the Sale Procedures Motion and, ultimately, to this Court's approval.

4    9.    I have reviewed, and have provided to the Debtor input regarding, the proposed

5   sale and bidding procedures with respect to the contemplated sale of the Purchased Assets.  The

6   sale and bidding procedures proposed by the Debtor are reflected in the Sale Procedures

7   Memorandum attached hereto as Exhibit "2" and incorporated herein by this reference.  It is my

8   belief that the proposed sale and bidding procedures are fair, provide for a level playing field to all

9   prospective bidders and for "transparency" in the sale process in this case, and will facilitate an

10   orderly and fair sale process in this case.

11    10.    I believe that the hearing on the Sale Procedures Motion should be held on as

12   prompt a basis as possible.  It is important for prospective bidders participating in the sale process

13   to obtain, as promptly as possible, notice of the sale and bidding procedures approved by the

14   Court.

15    11.    I have reviewed the Debtor's proposed timeline for the sale process in this case

16   (Exhibit "3" to the Tran Declaration).  I believe that the proposed timeline is reasonable under the

17   circumstances of this case and, in particular, given the Debtor's financial distress.

18    12.    The Debtor, with the assistance of GlassRatner, is in the process of marketing the

19   Debtor's assets.  The Debtor's marketing efforts will include the following:

20    a.    Advertising.  Notice of the sale of the Debtor's assets will be advertised for

21    approximately one month in the digital editions of the Los Angeles Times and the Silicon

22    Valley Business Journal.  Additionally, notice of the sale will be posted on websites that

23    specifically feature assets offered for sale through Bankruptcy Code Section 363

24    proceedings.

25    b.    Contacting of Potential Bidders.  GlassRatner, with input from the Debtor, is

26    in the process of developing a list of parties, such as competitors of the Debtor, that

27    potentially may have interest in acquiring assets of the Debtor.  GlassRatner will provide to

28    such parties, among other things, copies of the following documents:  the Sale Motion

1    Hearing Notice; the Sale Information Memorandum; and the Sale Procedures

2    Memorandum.  GlassRatner intends to supplement such list by providing notice of the sale

3    process to numerous mergers and acquisitions firms, investment banking firms and to other

4    potential financial and strategic acquirers.

5          c.    <u>Sale Motion Hearing Notice</u>.  The Debtor will serve a copy of the Sale

6    Motion Hearing Notice on all of the Debtor's creditors and other parties-in-interest in this

7    case.

8        13.    Attached as Exhibit "5" to the Tran Declaration is the Debtor's proposed Sale

9    Motion Hearing Notice to be served on creditors and parties-in-interest in connection with the Sale

10    Motion Hearing.  It is my understanding that the Debtor will serve the Sale Motion Hearing Notice

11    on the following entities:  (i) all creditors of the estate and parties-in-interest in this case; (ii) all

12    entities who have requested special notice in this case; and (iii) entities that have expressed

13    interest, or that the Debtor believes may have legitimate interest, in acquiring the Purchased Assets

14    (<u>e.g.</u>, competitors of the Debtor, investment banking firms, and other potential financial or

15    strategic acquirers), a list of which is being developed by GlassRatner with input from the Debtors.

16        14.    It is my understanding that the Debtor will serve a copy of the Sale Motion on the

17    following entities:  (i) the United States Trustee; (ii) any official committee of creditors that may

18    be formed in the case or any counsel employed thereby; and (iii) those parties whose unexpired

19    leases or executory contracts are proposed to be assumed and assigned, or rejected, in connection

20    with the Transaction.  All other creditors and parties-in-interest will receive a copy of the Sale

21    Motion Hearing Notice.

22        15.    The proposed notice to be provided to creditors and parties-in-interest (including,

23    without limitation, the entities most likely to submit bids for the purchase of the Purchased Assets)

24    is designed to attract interest in the acquisition of the Purchased Assets, and thereby to maximize

25    the value of the Purchased Assets.  I believe that, under the circumstances of this case, and

26    particularly in light of the Debtor's financial distress, the proposed notice of the sale process in this

27    case is reasonable.

28

MAINDOCS-#207871-v1-BAT_SaleProcMtn.doc

16.     I have been advised that the Stalking Horse Bidder is an entity affiliated with the Debtor.  GlassRatner will act to conduct the sale process fairly and in an open and transparent manner, with no bias in favor of the Stalking Horse Bidder.  GlassRatner is charged with the responsibility of conducting a fair and open sale process and attempting to maximize the recovery from the sale of the Debtor's assets, and will owe its duty and loyalty in this case solely to the Debtor's estate, and not to the Debtor's insiders or to the Stalking Horse Bidder.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 16th day of December 2014 at Irvine, California.

_____
Kerry Krisher

MAINDOCS-#207871-v1-BAT_SaleProcMtn.doc

1

**EXHIBIT "1"**

2

**RÉSUMÉS OF KERRY KRISHER AND ADAM MEISLIK**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



# GLASSRATNER

**Kerry Krisher**

*Principal*



**GlassRatner Advisory & Capital Group LLC**
19800 MacArthur Blvd.
Suite 820
Irvine, CA 92612

Tel: 949.429.4252
Fax: 949.743.0333

Email: kkrisher@glassratner.com

Kerry Krisher, a Principal in GlassRatner's Orange County, California office, is a CPA and experienced financial advisor with over 25 years of experience in Bankruptcy Consulting, Forensic Accounting, Acquisition Due Diligence, Litigation Support, and Public Accounting.  Ms. Krisher has been the lead professional on numerous high profile and complex assignments including large corporate bankruptcies, forensic accounting investigations for Fortune 500 companies, financial reporting frauds, failed transactions, and commercial litigation matters.  In addition, she has served as acting CFO for companies in and emerging from bankruptcy, led acquisition due diligence teams, and consulted in a number of divestiture transactions.

Ms. Krisher has provided a variety of financial restructuring and reorganization services to companies in Chapter 11 proceedings as well as out-of-court restructurings. In this capacity, she has also advised secured creditors, unsecured creditors committees, equity groups, and purchasers in matters involving financially distressed companies. Ms. Krisher has also served as a Plan Administrator in bankruptcy and civil litigation cases and has been appointed a state court Receiver.  She has served as Liquidating Trustee under chapter 11 Plans and as financial advisor to a chapter 7 trustee. While executing these responsibilities, she has provided numerous declaration testimonies in Federal and State courts on procedures followed and conclusions reached in matters of claims analysis and forensic accounting investigations.

Prior to joining GlassRatner in 2007, Ms. Krisher spent sixteen years in the consulting practices of three national turnaround and advisory services firms where she advised senior management and creditors in

several large corporate bankruptcies, provided forensic accounting services in a number of complex bankruptcy litigation matters, identified and assessed preference actions and fraudulent conveyance of assets, identified and quantified misappropriated assets, and led financial statement reconstruction projects.

In addition, Ms. Krisher has served as CFO and Controller in private industry and as an investment banker advising clients on M&A transactions. Ms. Krisher has significant experience in a wide variety of industries including oil & gas, real estate, dairy, agriculture, restaurant and food service, automotive, hospitality, retail, media and entertainment, telecommunications, manufacturing, and distribution, advising companies with multi-location and multi-national operations.

Ms. Krisher holds a Master of Business Administration degree from Tulane University and a Bachelor of Arts from the University of California, Santa Barbara. She is a California Certified Public Accountant, a Certified Forensic Accountant, and she is Certified in Financial Forensics (CFF).



# GLASSRATNER

**Adam Meislik**
*Senior Managing Director*



19800 MacArthur Blvd. Suite 820
Irvine, CA 92612

**Office:** Irvine
**Main:** (949) 407-6627
**Cell:** (949) 281-6458
**Fax:** (949) 743-0333

ameislik@glassratner.com

Adam Meislik joined GlassRatner in 2012 as a Senior Managing Director. Adam leverages his accomplished career, spanning twenty years in restructuring and corporate finance, into various roles for his clients, including Financial Advisor, Investment Banker, CRO, and Expert Witness in complex litigation matters. His clients have run the gamut, including companies, bank lenders and other secured and unsecured creditors, buyers, sellers, bankruptcy counsel and litigators, all in the context of workouts, insolvency proceedings, fund raising, M&A, and litigation. He provides expert testimony concerning transactions, intangible/intellectual assets, valuation, solvency, and reasonably equivalent value issues.

Adam combines lateral thinking and a proactive approach with a careful understanding of businesses beyond the financials -- evaluating and identifying advantage, assessing competitive environments, and industry trends. Having a holistic view of a company and its market enables him to derive non-obvious and effective solutions.

Adam has a proven record advising, structuring, and executing in excess of 100 mergers, acquisitions, capital transactions restructurings, and litigation support assignments, including the following recent assignments:

- Financial advisor to publicly traded software and services company in their Chapter 11 reorganization, including securing a DIP loan and running a Section 363 sale



- Financial advisor to a major bank in their capacity as pre-petition and DIP lender in the bankruptcy of their oil refinery borrower
- Financial advisor to unsecured creditors committees in various industries
- Expert witness in California Superior Court on enterprise value, securities valuation, solvency and capital formation process issues resulting in litigation arising from a restructuring
- Expert witness in capital markets environment as it related to financing an oil and gas company
- Financial advisor in the out-of-court restructuring and sale of a large consumer electronics manufacturer, including rendering fairness opinion and litigation support
- Financial advisor to Chapter 11 Debtor in the after-market automotive and licensed consumer goods industries
- Financial advisor to temporary staffing company in their loan work-out and refinancing
- Financial advisor to a cruise and travel company in their out-of-court restructuring

Prior to joining GlassRatner, Adam was a Principal with XRoads Solutions Group. He spent half his career at CIBC World Markets and its predecessor, Oppenheimer & Company where he led numerous multi-disciplinary teams on large capital markets, M&A, and restructuring assignments. He also co-established CIBC's Houston-based energy practice and helped establish CIBC's software practice. Prior to CIBC, Adam worked in the energy groups at Jefferies and Howard Weil.

Adam also serves as a director of public and private companies. Currently, he is board director of eight-year-old Orange County-based Sendio, an email security provider. Adam previously served in a board-level role to Lateral Data, an e-discovery software company, prior to its July 2012 sale to Xerox.

Adam majored in finance and graduated with a Bachelors of Science in Management from Tulane University in 1993. He holds FINRA Series 24, 79, and 62 licenses. Adam is also a member of the Turnaround Management Association.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT "2"**

**SALE PROCEDURES MEMORANDUM**

## SALE PROCEDURES MEMORANDUM

## BRAND AFFINITY TECHNOLOGIES, INC.

On December 15, 2014, Brand Affinity Technologies, Inc. ("Seller") filed in the United States Bankruptcy Court for the Central District of California, Santa Ana Division ("Bankruptcy Court"), a petition for relief under Chapter 11 of the Bankruptcy Code [Case No. 8:14-bk-17244 SC] ("Bankruptcy Case"). In connection with Seller's Bankruptcy Case, Seller is seeking to sell, at auction ("Auction"), substantially all of the assets and properties associated with the operation of Seller's business ("Business"), free and clear of any and all claims, liens and interests of any creditor of Seller, pursuant to the provisions of Section 363(f) of the Bankruptcy Code. In order to create a fair, orderly and competitive process for the Auction of Seller's assets and properties, Seller has proposed, and the Bankruptcy Court has approved, the following sale and bidding procedures ("Sale Procedures") with respect to the contemplated Auction.

## AUCTION OF ASSETS OF THE BUSINESS

**A.    Marketed Assets.** Seller proposes to sell substantially all of the assets and properties associated with the operation of Seller's Business, including without limitation, Seller's furniture, fixtures, equipment, inventory, intellectual property rights, capital stock interests in an affiliated entity, and material contracts and leases associated with the operation of the Business (collectively, the "Marketed Assets").

**B.    Seller's Retention of Financial Advisor.** Seller has retained GlassRatner Advisory & Capital Group, LLC ("GlassRatner") to assist Seller as Seller's financial advisor in connection with the marketing and sale of Seller's Business. GlassRatner will be primarily responsible for marketing Seller's Business, interfacing with prospective bidders regarding qualification of bidders with respect to their participation in the Auction and performance of diligence investigations with respect to a purchase of the Marketed Assets and for conducting the Auction. GlassRatner also will consult with Seller regarding the sale process, the evaluation of any bids made for the Marketed Assets and the selection of the "Successful Bidder" (as defined below). Ms. Kerry Krisher is the GlassRatner professional primarily responsible for providing the financial advisory services to Seller.

**C.    Stalking Horse Bidder.** Creekside Investment Management, LLC, a California limited liability company ("Stalking Horse Bidder"), has provided to Seller an offer to acquire the Marketed Assets, and Seller has accepted that offer, subject to the approval of the Bankruptcy Court. Seller and the Stalking Horse Bidder have entered into that Asset Purchase Agreement, a copy of which, in materially final form, is attached hereto as Exhibit "1" ("Stalking Horse Bidder's Purchase Agreement"). The proposed purchase and sale transaction ("Transaction") between Seller and the Stalking Horse Bidder is subject to overbid in accordance with the Sale Procedures set forth herein.

**D.    Sale of Marketed Assets.** Seller intends to have GlassRatner conduct an Auction of the Marketed Assets, with open bidding by prospective buyers, in accordance with and subject to the Sale Procedures approved by the Bankruptcy Court.

Seller has filed a motion requesting that the Bankruptcy Court authorize Seller to sell and assign to the Stalking Horse Bidder the Marketed Assets ("Sale Motion"), subject to any overbids. The hearing on the Sale Motion will be held on _____, 2015, at _____ ("Sale Motion Hearing").

The terms of the purchase and sale of the Marketed Assets will be subject to the approval of the Bankruptcy Court at the Sale Motion Hearing.

**E.** **Bidder Pre-Qualification for Auction.** Any person or entity that desires to participate in the Auction must be a qualified bidder ("Qualified Bidder"). In order to become a Qualified Bidder, a bidder must satisfy the following requirements:

**1.** **Required Documentation/Evidence of Bidder's Ability to Consummate the Proposed Transaction.** In order for a potential bidder to be deemed a Qualified Bidder to participate in the Auction, the bidder must deliver to GlassRatner (with a copy to Seller's counsel), among other things, the following documents: (a) an executed confidentiality agreement in the form attached hereto as Exhibit "2" (Seller reserves the right to require that such form of the confidentiality agreement be executed, without any revisions thereto); (b) current financial statements of the bidder, current bank account statements of the bidder or such other form of disclosure regarding the bidder's financial condition acceptable to Seller, providing to Seller evidence of the bidder's having sufficient funds, a commitment for financing or ability otherwise to consummate its proposed Transaction, (c) a letter setting forth the identity of the bidder, the contact information for the bidder, and full disclosure of any pre-petition or post-petition affiliations that the bidder has or may have with (i) Seller, (ii) any of Seller's affiliates, (iii) any creditor of Seller, (iv) any holder of an equity interest in Seller, or (v) any of Seller's current or former officers, directors or other insiders, and/or their relatives or family members; (d) an executed letter acknowledging receipt of a copy of this Sale Procedures Memorandum and agreeing to accept and be bound by the provisions contained herein; (e) a written statement by the bidder that any bid made by the bidder is irrevocable and binding until the closing ("Closing") of the sale of Marketed Assets, if the bidder is the Successful Bidder or the "Back-Up Bidder" (defined below); and (f) any other documents reasonably requested by Seller.

In addition, a potential bidder will qualify to participate in the Auction only if the potential bidder demonstrates its ability to consummate the Transaction contemplated by the terms of the potential bidder's bid and demonstrates its ability to provide, under Section 365 of the Bankruptcy Code, adequate assurance of its future performance under all leases and contracts that the bidder desires to assume from Seller ("Assumed Contracts"). Each bidder must cooperate with Seller with respect to the assumption and assignment of Assumed Contracts to the bidder by providing to Seller information regarding the bidder, including financial information regarding the bidder, that will be sufficient to demonstrate adequate assurance of the bidder's future performance pursuant to the Assumed Contracts. Seller may deliver such information to the non-debtor party to an Assumed Contract, and may file such information with the Bankruptcy Court. Seller may decline to recognize a potential bidder as a Qualified Bidder if Seller determines that the potential bidder lacks the ability to consummate timely the proposed Transaction.

MAINDOCS-#207961-v5-BAT_SaleProcMemo.doc

Seller may take into account several subjective factors in determining whether a bidder will be deemed to be a Qualified Bidder. Seller may approve as many or as few Qualified Bidders as it deems appropriate for an active and productive sale process. Seller may consult with, and may take into account any input provided by, any Official Unsecured Creditors' Committee ("Committee") that may be appointed in the Bankruptcy Case, any creditor and any other party-in-interest.

By way of example, and not limitation, Seller will require that, in order for a bidder to be deemed a Qualified Bidder, the bidder demonstrate to Seller that the bidder can obtain timely for consummating the proposed Transaction any acquisition and/or working capital financing that the bidder proposes to obtain to fund the proposed Transaction, and the bidder demonstrate to Seller that the bidder will be able to close timely the Transaction.

    2.    **Bid Requirements**. Seller will require that all bids be in the form of an Asset Purchase Agreement, comparable to the form of the Stalking Horse Bidder's Purchase Agreement, marked to show all proposed revisions to the Stalking Horse Bidder's Purchase Agreement, including the purchase price and other financial terms proposed by the Qualified Bidder ("Overbidder's Purchase Agreement").

Seller will require that a Qualified Bidder's bid for Marketed Assets be signed by the Qualified Bidder and be irrevocable if the Qualified Bidder's bid is approved by the Bankruptcy Court as the "Successful Bid" (as defined below) for Marketed Assets.

Unless otherwise determined by Seller in the exercise of its sole and absolute discretion, Seller will consider a Qualified Bidder's bid <u>only</u> if the bid (a) provides, in the case of any bidder other than the Stalking Horse Bidder, for a purchase price ("Purchase Price") with a value not less than the sum of: (i) $400,000 cash; (ii) the amount of sales taxes that will be assessed in connection with the Transaction; (iii) the amount of any costs required to be paid to cure arrearages under the Assumed Contracts in connection with the assumption and assignment to the Qualified Bidder of any Assumed Contracts; (iv) the value to Seller's Chapter 11 estate of the assumption by the Stalking Horse Bidder of the "Assumed Liabilities," as that term is defined in Article II of the Stalking Horse Bidder's Purchase Agreement; and (v) an initial overbid of $50,000; (b) is not conditioned on the Qualified Bidder's obtaining financing; (c) is not conditioned on the outcome of diligence to be performed by the Qualified Bidder after the Bid Deadline (as defined below); (d) states the legal and identifying tax identification number of the Qualified Bidder; (e) does not include any closing conditions or other terms more burdensome to Seller than those set forth in the Stalking Horse Bidder's Purchase Agreement; and (f) does not request a payment of a break-up fee or expense reimbursement ("Qualified Bid").

    3.    **Deposit**. In order for a bidder to qualify as a Qualified Bidder, the bidder must provide to Seller a deposit in the amount of $100,000 ("Deposit"):

    a.    <u>Payment of Deposits</u>. The Deposit must be wired to Winthrop Couchot Professional Corporation ("Winthrop Couchot"), Seller's counsel. Wire instructions are attached as Exhibit "3" hereto.

b.      Refund of Deposits.  A Qualified Bidder will be entitled to obtain a refund of its Deposit (1) upon the Qualified Bidder's giving, prior to the Auction, to GlassRatner and to Winthrop Couchot, written request for the refund of the Deposit ("Refund Notice"), or (2) if the Qualified Bidder's Qualified Bid is not selected as the Successful Bid in accordance with the provisions of paragraph K hereof.  All Deposits provided by the Successful Bidder will be non-refundable, in accordance with the provisions of paragraph N hereof.  Upon a Qualified Bidder's giving any Refund Notice, the Qualified Bidder's bid will be deemed to be rescinded and of no further force or effect.

Seller will notify promptly each potential bidder whether Seller will deem the bidder to be a Qualified Bidder or whether Seller has declined to recognize the bidder as a Qualified Bidder.  Seller also will notify promptly any Committee of Seller's determination in that regard.  The Stalking Horse Bidder is deemed to be a Qualified Bidder.

Seller may provide to any bidder an opportunity to remedy any deficiencies in a bid.

Seller's recognizing a bidder as a Qualified Bidder reflects only that the bidder may participate in the Auction, and does not reflect any determination by Seller, or by the Bankruptcy Court, that the bidder is capable of consummating the proposed Transaction, or is capable of demonstrating adequate assurance of the bidder's future performance under any Assumed Contracts in accordance with Section 365 of the Bankruptcy Code.  Seller reserves the right to reject any Qualified Bid as unsatisfactory, or to discount a Qualified Bid relative to other bids, based upon any matter pertaining to the business experience or financial condition of the bidder, or based upon any other matter pertaining to the bidder, that Seller believes will impair Seller's ability to obtain from the Bankruptcy Court approval of the proposed Transaction with the bidder or otherwise will impair Seller's ability to close timely the proposed Transaction with the bidder.

F.      Due Diligence.  Parties interested in purchasing the Marketed Assets who have satisfied the requirements of paragraph E(1) above may obtain diligence materials, and arrange for inspection of the Marketed Assets, by contacting Kerry Krisher or Adam Meislik of GlassRatner, as follows:

Kerry Krisher
GlassRatner Advisory & Capital Group, LLC
19800 MacArthur Blvd., Suite 820
Irvine, CA 92612
E-Mail: kkrisher@glassratner.com
Telephone: (949) 429-4252
Fax: (949) 743-0333

Adam Meislik
GlassRatner Advisory & Capital Group, LLC
19800 MacArthur Blvd., Suite 820
Irvine, CA 92612
E-Mail: ameislik@glassratner.com
Telephone: (949) 407-6627
Fax: (949) 743-0333

MAINDOCS-#207961-v5-BAT_SaleProcMemo.doc

GlassRatner has established an electronic "data room" at which there is located substantial financial information regarding the Marketed Assets and the Business. Access to the electronic data room may be obtained by Qualified Bidders by contacting GlassRatner.

**G.    Bid Deadline.**  The deadline for all Qualified Bidders to submit a Qualified Bid is noon, Pacific Time on January 23, 2015 ("Bid Deadline"), subject to Seller's ability to extend the Bid Deadline as it deems appropriate.

A bidder that desires to make a Qualified Bid must deliver, by mail, e-mail or by personal delivery, (1) an executed copy of the Qualified Bid (in the form of the Overbidder's Purchase Agreement), with original signatures, (2) a corresponding redlined version of the Qualified Bid (in the form of the Overbidder's Purchase Agreement), marked to show changes made to the Stalking Horse Bidder's Purchase Agreement, and (3) the materials required to become a Qualified Bidder as set forth in paragraph E(1) above, as follows:

|                  |                                                  |
|------------------|--------------------------------------------------|
| To GlassRatner:  | Kerry Krisher<br>GlassRatner Advisory & Capital Group, LLC<br>19800 MacArthur Blvd., Suite 820<br>Irvine, CA 92612<br>E-Mail: kkrisher@glassratner.com |
| With a Copy to Seller's Counsel: | Robert E. Opera, Esq.<br>Winthrop Couchot Professional Corporation<br>660 Newport Center Drive, Fourth Floor<br>Newport Beach, CA 92660<br>E-Mail: ropera@winthropcouchot.com |

**H.    Seller's Consideration of Bids.**  After all Qualified Bids have been received by Seller, Seller, after consultation with any Committee, will determine the best Qualified Bid, including the bid by the Stalking Horse Bidder. Seller will make this determination based, in part, upon the financial and other terms proposed by the Qualified Bidder pursuant to its Qualified Bid, and Seller's determination regarding the likelihood of Seller's ability to consummate timely a Transaction with the Qualified Bidder in accordance with the terms and conditions of the Qualified Bidder's Qualified Bid, taking into account, among other things, the evidence provided by the Qualified Bidder of its financial ability to close timely the Transaction.

Seller will favor bids that provide, in part, for the following terms: (1) a Purchase Price payable all in cash, rather than one that requires that Seller finance a portion of the Purchase Price; (2) the assignment to the Qualified Bidder of Seller's executory contracts and unexpired leases associated with the operation of the Business; (3) Seller's retention of the "Excluded Assets" associated with the Business as provided in section 1.2 of the Stalking Horse Bidder's Purchase Agreement; (4) Seller's making covenants, or making representations or warranties, not more burdensome to Seller than those set forth in the Stalking Horse Bidder's Purchase Agreement; (5) conditions to the closing of the Transaction not more burdensome than those set forth in the Stalking Horse Bidder's Purchase Agreement; (6) an expeditious Closing of the Transaction; and (7) a Transaction that is reasonably certain to be consummated.

MAINDOCS-#207961-v5-BAT_SaleProcMemo.doc

Exhibit 2, Page 15

Subject to the approval of the Bankruptcy Court at the Sale Motion Hearing, Seller may, in the exercise of its business judgment and after consultation with any Committee, reject a bid that is not an all-cash bid, or discount any bid that is not an all-cash bid relative to a cash bid, based upon criteria adopted reasonably by Seller (e.g., based upon whether collateral is provided to secure the payment of the non-cash component of the bid; the terms of the non-cash bid; the bidder's ability to demonstrate that the bidder will be able to pay the non-cash portion of its bid; Seller's need for cash in the administration of its case and the effectuation of any Chapter 11 plan).

    **I.**    **Auction.** Seller will conduct an Auction with respect to the Marketed Assets. The Auction will be held on January 28, 2015, at 10:00 a.m., at the office of Seller's counsel, Winthrop Couchot Professional Corporation, located at 660 Newport Center Drive, Suite 400, Newport Beach, California 92660, or on such other date and time or at such other place as may be determined by Seller and noticed to Qualified Bidders.

The Auction will be held in person; provided, however, that Seller reserves the right, in the exercise of its sole and absolute discretion, to allow telephonic participation by certain bidders. Qualified Bidders, and representatives of Qualified Bidders, will be entitled to attend and/or participate at the Auction.

Seller may elect to have the bidding at the Auction transcribed or videotaped.

Seller may elect, in the exercise of its sole and absolute discretion, not to hold an Auction if no overbids, or only overbids deemed unsatisfactory by Seller, are received by Seller. Seller will provide to all Qualified Bidders notice of any cancellation of the Auction.

If an Auction is held, the following rules for the conduct of the Auction, which are subject to waiver or modification, in the exercise of the sole and absolute discretion of Seller, will be observed:

    1.    Only a bidder deemed to be a Qualified Bidder by Seller will be eligible to participate at the Auction; provided, however, that any party-in-interest may attend (but not participate in) the Auction if it provides by the Bid Deadline to Winthrop Couchot notice of such party's intention to attend the Auction.

    2.    Each Qualified Bidder will be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale process.

    3.    At the Auction, each Qualified Bidder will be permitted, but will not be required to, increase its bid, provided that the minimum bidding increments will be in accordance with the provisions of paragraph J hereof.

    4.    Each Qualified Bidder will be permitted a fair, but limited, amount of time (as determined in the discretion of Seller) to respond to the previous bid at the Auction. Bidding at the Auction will continue until such time as the highest or otherwise best offer is determined in accordance with the Sale Procedures.

    5.    Seller will, from time to time, in an open forum, advise Qualified Bidders participating in the Auction of the then highest or otherwise best bid.

MAINDOCS-#207961-v5-BAT_SaleProcMemo.doc

**Exhibit 2, Page 16**

6.    The Auction may be adjourned by Seller, after consultation with any Committee. Reasonable notice of the time and place for the resumption of the Auction will be given to all Qualified Bidders, any Committee and other invited parties.

7.    Seller may seek to sell the Marketed Assets through a single Transaction, or through separate Transactions under separate Purchase Agreements with different purchasers in the event that the combination of such sales is determined by Seller in the exercise of its sole and absolute discretion, but after consultation with any Committee, to obtain the highest or otherwise best bid for the Marketed Assets.

**J.    Overbidding at Auction.** Seller will announce at the commencement of the Auction the Qualified Bid that Seller determines to be the most favorable bid for the Marketed Assets. At the Auction, Qualified Bidders, including the Stalking Horse Bidder, will have the opportunity, but not the obligation, to make in an open forum overbids in excess of their initial bids.

The Purchase Price offered by any overbidder must include an initial overbid in an amount not less than $50,000. Subsequent overbids by any bidder (including the Stalking Horse Bidder) must be in minimum increments of not less than $20,000. Seller reserves the right to amend the bidding terms at any time.

**K.    Successful Bid.** At the Auction, Seller, after consultation with any Committee, will announce, after a bid is made by a bidder, the then best bid for the Marketed Assets based, in part, upon the following criteria:  (1) the financial and other terms proposed in the bids for the Marketed Assets; (2) the financial wherewithal of the bidders to consummate the proposed Transaction in a timely manner; and (3) the other factors referenced in paragraph H hereinabove. After the conclusion of bidding, Seller, after consultation with any Committee, will select the successful bid for the Marketed Assets ("Successful Bid"), based, in part, upon the above-referenced criteria.

Within one (1) business day after the completion of the Auction, the bidder making the Successful Bid ("Successful Bidder") must (a) increase its Deposit to an amount equal to 33% of the amount of the Purchase Price for the Marketed Assets ("Successful Bidder Deposit"), and (b) complete, execute and deliver to Seller all agreements, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made. The Successful Bidder Deposit must be paid by wire transfer to Seller's counsel, Winthrop Couchot. Any failure by a Successful Bidder to provide timely the Successful Bidder Deposit will result in a forfeiture of all Deposits previously provided to Seller by such Successful Bidder.

**L.    Bankruptcy Court Approval.** Seller will submit the Successful Bid to the Bankruptcy Court, for approval by the Bankruptcy Court at the Sale Motion Hearing. The Sale Motion Hearing is scheduled for _____, 2015, at _____. Seller will provide to each Qualified Bidder written notice of the date and time of the Sale Motion Hearing.

**M.    Sale Order.** Seller will submit to the Bankruptcy Court, at the Sale Motion Hearing or as soon thereafter as practicable, a proposed order approving the Sale Motion ("Sale Order"), pursuant to which the Bankruptcy Court will authorize Seller to consummate the Transaction with the Successful Bidder, in accordance with the terms and conditions of the

Successful Bid. The Sale Order will be in a form acceptable to the Successful Bidder, which acceptance cannot be unreasonably withheld by the Successful Bidder.

      **N.**    **Non-Refundable Deposit of Successful Bidder.**  At the conclusion of the Sale Motion Hearing, the Successful Bidder Deposit will become non-refundable. In the event that the Successful Bidder fails, through no fault of Seller, to consummate timely the Transaction approved by the Sale Order, the Successful Bidder will irrevocably forfeit the Successful Bidder Deposit and all other Deposits that it will have provided to Seller.

      **O.**    **Back-Up Bids.**  Seller will request that, in connection with the Sale Order, the Bankruptcy Court determine the priority, with reference to the favorableness to Seller's Chapter 11 estate, of any Qualified Bid made by one or more Qualified Bidders other than the Successful Bidder ("Back-Up Bidders") and establish the date by which each Back-Up Bidder must consummate a Transaction with Seller (as such Back-Up Bidder's bid may be improved by the terms of any overbid made by such Back-Up Bidder pursuant to the Auction), in the event that the Successful Bidder fails to consummate its Transaction with Seller by the date established by the Bankruptcy Court therefor. If a Successful Bidder fails to close timely a Transaction after approval of the Transaction by the Bankruptcy Court, the next highest or otherwise best back-up bid ("Back-Up Bid"), as determined by the Sale Order, instead will be deemed to be the Successful Bid with respect to such Transaction, without any need for further order of the Bankruptcy Court, in which case, the Back-Up Bidder will be required to increase the amount of its Deposit to the amount of the Successful Bidder Deposit, in the same manner as set forth in paragraph K hereinabove.

      Seller reserves the right to seek all additional damages from, and to exercise all remedies against, a defaulting Successful Bidder or Back-Up Bidder.

      **P.**    **Retention and Return of Deposits.**  Except as provided expressly to the contrary in paragraph E(3)(b) hereof, all Deposits provided to Seller by Qualified Bidders will be retained by Seller, and all Qualified Bids will remain open, notwithstanding the Bankruptcy Court's approval of a Transaction with the Successful Bidder, until two (2) business days after the Closing of the Transaction with the Successful Bidder, but in no event later than thirty (30) days after the Sale Motion Hearing without the consent of the Qualified Bidder; provided, however, that Seller will return, within seven (7) days after the Auction, all Deposits provided by a Qualified Bidder if Seller determines, in the exercise of its sole and absolute discretion, after consultation with any Committee, that the Qualified Bid of such Qualified Bidder is not viable as a Back-Up Bid.

      **Q.**    **Closing of the Transaction.**  The Closing of a Transaction with the Successful Bidder or with any Back-Up Bidder will occur in accordance with the terms and conditions with respect thereto provided by the Stalking Horse Bidder's Purchase Agreement or by the Overbidder's Purchase Agreement, as the case may be, but in no event later than February 17, 2015.

      **R.**    **Seller's Discretion with Respect to Sale Procedures.**  Seller may amend the Sale Procedures set forth herein, or may adopt additional procedures or rules for the bidding process, that in the discretion of Seller will promote better the goals of the sale process and which will maximize the proceeds generated for the benefit of Seller's estate which are not

inconsistent with the provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or the Local Bankruptcy Rules. Without limiting the generality of the foregoing, Seller may, in the exercise of its sole and absolute discretion, do any of the following: (1) extend the Bid Deadline; (2) deem a bidder a Qualified Bidder, notwithstanding the bidder's failure to comply with the terms of the Sale Procedures, or notwithstanding any initial determination by Seller that the bidder is not a Qualified Bidder; (3) adopt criteria that Seller deems appropriate for determining the Successful Bid; (4) amend the terms and conditions of the Stalking Horse Bidder's Purchase Agreement or an Overbidder's Purchase Agreement, including, without limitation, the Purchase Price, conditions to the Closing of the Transaction contemplated thereby, and the timing of the Closing of the Transaction, as Seller and the bidder may mutually agree; (5) sell any Excluded Asset (other than bankruptcy avoidance claims and causes of action); (6) reject any bid that is inadequate or insufficient, or that is not in conformity with the requirements of the Sale Procedures; and (7) allow additional bidding after the Auction, up to the conclusion of the Sale Motion Hearing, as Seller may deem appropriate. Seller's ability to consummate any Transaction, however, will be subject to the approval of the Bankruptcy Court.

     **S.**    **Acceptance of Successful Bid.** Seller's obligation to consummate a sale of the Marketed Assets to the Successful Bidder will arise only when the Bankruptcy Court approves the proposed Transaction at the Sale Motion Hearing, and the Successful Bidder tenders in full the Purchase Price for the Marketed Assets and otherwise complies with its obligations under its Purchase Agreement. Seller reserves the right, in the exercise of its sole and absolute discretion, to decline to sell the Marketed Assets in the event that (1) the Stalking Horse Bidder does not consummate timely its proposed Transaction, and (2) Seller determines that the terms of any overbid are unsatisfactory or are not in the best interest of Seller's creditors.

     All funds that a bidder will pay to Seller in connection with the sale process described herein, including, without limitation, all Deposits and the purchase price, will be paid to the attorney trust account of Winthrop Couchot. Winthrop Couchot will hold all such funds and will not release such funds to Seller or to a bidder, unless either (1) Seller and the bidder provide to Winthrop Couchot their mutual written instructions authorizing the release of such funds, and any Committee is given not less than three (3) business days' notice of such intended release of funds, or (2) the Bankruptcy Court enters an order authorizing the release of such funds after notice and a hearing. All bidders hereby absolve and waive and release fully and completely Winthrop Couchot from any liability of any nature whatsoever for any acts taken by Winthrop Couchot in accordance with the provisions of this paragraph.

     **T.**    **Jurisdiction.** Any and all disputes relating to, resulting or arising from the Sale Procedures set forth herein, the Auction, the Sale Motion, the Sale Motion Hearing, the selection of the Successful Bidder, the disposition of Deposits or the conduct of Seller, will be adjudicated solely by the Bankruptcy Court. A bidder's submission of a bid will constitute an express consent by the bidder to the exclusive jurisdiction of the Bankruptcy Court to hear and to rule on any action or proceeding with respect to all such matters. Notwithstanding the foregoing, in the event that the Bankruptcy Case should be closed or dismissed, any action or proceeding with respect to such matters may be brought only in the state or federal courts sitting in Orange County, California.

     **FOR FURTHER INFORMATION REGARDING THE MARKETED ASSETS, DUE DILIGENCE OR THE SALE PROCESS, PLEASE CONTACT:**

MAINDOCS-#207961-v5-BAT_SaleProcMemo.doc

**Exhibit 2, Page 19**

GlassRatner:                 Kerry Krisher
                            GlassRatner Advisory & Capital Group, LLC
                            19800 MacArthur Blvd., Suite 820
                            Irvine, CA 92612
                            E-Mail: kkrisher@glassratner.com
                            Telephone: (949) 429-4252
                            Fax: (949) 743-0333

Seller's Counsel:            Robert E. Opera, Esq.
                            Winthrop Couchot Professional Corporation
                            660 Newport Center Drive, Suite 400
                            Newport Beach, California 92660
                            Telephone: (949) 720-4100
                            Telefax: (949) 720-4111
                            E-mail: ropera@winthropcouchot.com

-10-

**EXHIBIT "1"**

**ASSET PURCHASE AGREEMENT**

[TO BE ADDED]

**EXHIBIT "2"**

**CONFIDENTIALITY AGREEMENT**

[TO BE ADDED]

MAINDOCS-#207961-v5-BAT_SaleProcMemo

**EXHIBIT "3"**

**WIRE INSTRUCTIONS**

MAINDOCS-#207961-v5-BAT_SaleProcMemo.doc

## Pay to Bank:

First Republic Bank
3991 MacArthur Blvd, Ste 300
Newport Beach, CA. 92660

## Routing Number

321-081-669

## Beneficiary:

Winthrop Couchot

## Account Number

95300023807

IF YOU HAVE FURTHER QUESTIONS, PLEASE CALL:

949-255-2700

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Floor, Newport Beach, CA 92660.

A true and correct copy of the foregoing document entitled: **Declaration Of Kerry Krisher In Support Of Debtor's Motion For Order:  (1) Approving Sale And Bidding Procedures In Connection With The Sale Of Assets Of The Debtor's Estate Free And Clear Of Liens And Interests; (2) Setting A Hearing On Sale Motion; And (3) Approving Form And Manner Of Notice To Be Provided To Creditors And Parties-In-Interest In Connection With Sale Motion** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On December 16, 2014, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on December 16, 2014, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**Via Attorney Service**
Honorable Scott C. Clarkson
Ronald Reagan Federal Building
411 W. Fourth St.
Santa Ana, CA 92701

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 16, 2014 | Melody Conour | /s/ Melody Conour |
|---|---|---|
| Date | Printed Name | Signature |

NEF SERVICE LIST

- **Nancy S Goldenberg**    nancy.goldenberg@usdoj.gov
- **Robert E Opera**    ropera@winthropcouchot.com,
  pj@winthropcouchot.com;vcorbin@winthropcouchot.com;mconour@winthropcouchot.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov